UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ISLAM AHMED ELSAID SALEM,

    Plaintiff,

  v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]

    Defendant.

**REPORT AND RECOMMENDATION**

12-CV-1441
(MAD/VEB)

## I. INTRODUCTION

In August of 2009, Plaintiff Islam Ahmed Elsaid Salem applied for supplemental security income ("SSI") benefits under the Social Security Act. Plaintiff alleges that he has been unable to work since that time due to migraine headaches, intellectual functioning deficits, and psychological impairments. The Commissioner of Social Security denied Plaintiff's application.

Plaintiff, by and through his attorney, Steven R. Dolson, Esq., commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On October 2, 2013, the Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 15).

---

[1]On February 14, 2013, Carolyn W. Colvin took office as Acting Social Security Commissioner. The Clerk of the Court is directed to substitute Acting Commissioner Colvin as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

## II. BACKGROUND

The procedural history may be summarized as follows:

On August 25, 2009, Plaintiff applied for SSI benefits under the Social Security Act. (T at 128-30).[2] The application was denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held in Syracuse, New York, on November 2, 2010, before ALJ Jeffrey M. Jordan. (T at 22). Plaintiff appeared with his attorney and testified. (T at 26-37). David Festa, a vocational expert, also testified. (T at 38-39).

On January 13, 2011, ALJ Jordan issued a written decision finding that Plaintiff was not disabled within the meaning of the Social Security Act and denying his claim for benefits. (T at 7-21). The ALJ's decision became the Commissioner's final decision on August 28, 2012, when the Social Security Administration Appeals Council denied Plaintiff's request for review. (T at 1-6).

Plaintiff, by and through counsel, timely commenced this action by filing a Complaint on September 19, 2012. (Docket No. 1). The Commissioner interposed an Answer on December 31, 2012. (Docket No. 9). Plaintiff filed a supporting Brief on January 17, 2013. (Docket No. 12). The Commissioner filed a Brief in opposition on January 28, 2013. (Docket No. 14).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had

---

[2]Citations to "T" refer to the Administrative Transcript. (Docket No. 10).

accompanied their briefs with a motion for judgment on the pleadings.[3]

For the reasons below, it is recommended that Plaintiff's motion be granted, the Commissioner's motion be denied, and this case be remanded for further proceedings.

## III. DISCUSSION

### A. Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford

---

[3]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[4]

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age,

---

[4]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

    **1.    Commissioner's Decision**

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 25, 2009 (the application date). (T at 12). The ALJ found that Plaintiff had the following "severe" impairments, as defined under the Social Security Regulations: anxiety disorder, adjustment disorder with mixed emotional features, attention deficit disorder, borderline intellectual functioning, and migraines. (T at 12). The ALJ determined that Plaintiff's medically determinable impairments did not meet or equal one of the impairments listed in Appendix I of the Regulations (the "Listings"). (T at 12-14).

The ALJ concluded that Plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels, but was limited to performing simple, routine, low stress, and unskilled work with limited public contact and limited requirements with regard to reading, writing, and math. (T at 14-16).

The ALJ determined that Plaintiff had no past relevant work. (T at 16). Considering Plaintiff's age (18 on the application date), education (limited), ability to communicate in English (limited) and RFC, the ALJ concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (T at 17-18).

Accordingly, the ALJ concluded that Plaintiff had not been under a disability, as that

term is defined under the Act, from the application date (August 25, 2009) through the date of the ALJ's decision (January 13, 2011), and was therefore not entitled to benefits. (T at 18). As noted above, the ALJ's decision became the Commissioner's final decision on August 28, 2012, when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

### 2. Plaintiff's Claim

Plaintiff argues that the Commissioner's decision should be reversed. In particular, he asserts that the ALJ should have concluded that Plaintiff's cognitive impairment met § 12.05 of the Listings.

Impairments listed in Appendix 1 of the Regulations (the "Listings") are "acknowledged by the [Commissioner] to be of sufficient severity to preclude" substantial gainful activity. Accordingly, a claimant who meets or equals a Listing is "conclusively presumed to be disabled and entitled to benefits." Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir.1995); see 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.").

The claimant bears the burden of establishing that his or her impairments match a Listing or are equal in severity to a Listing. See Naegele v. Barnhart, 433 F. Supp.2d 319, 324 (W.D.N.Y. 2006) ("It must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements.").

Plaintiff argues that his cognitive impairment meets the impairment set forth in § 12.05 of the Listings (Intellectual disability). Listing § 12.05 states that "intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence

demonstrates or supports onset of the impairment before age 22." The required level of severity for this disorder is met when the requirements in A, B, C, or D of the Listing are satisfied. Plaintiff argues that his impairment meets subsection C of the Listing.

To satisfy Listing § 12.05(C), the claimant must show: (1) significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid IQ score of 60 through 70; and (3) a "physical or other mental impairment imposing an additional and significant work-related limitation of function."

In this case, Dr. Lewis Malgieri, Plaintiff's treating psychologist, performed IQ testing in February of 2009, when Plaintiff was seventeen years old. The results of the Peabody Picture Vocabulary Test indicated an IQ of 65 (1st percentile). (T at 246). Dr. Malgieri reported that the results of the Wechsler Abbreviated Scale of Intelligence (WASI) indicated a verbal IQ of 73 (4th percentile), a performance IQ of 62 (1st percentile), and a full scale IQ of 66 (1st percentile). (T at 246).

The ALJ noted that several of these IQ scores fell within the §12.05(C) range of 60-70. However, the ALJ found that Plaintiff had not satisfied the Listing because "the non-verbal testing performed by Dr. Malgieri appears to be a more indicator [*sic*] of the claimant's intellectual functioning because it eliminates the language barrier." (T at 14). The ALJ did not discuss the other aspects of §12.05 (C).[5]

---

[5]The Second Circuit "has not yet ruled on what test should be utilized with respect to § 12.05 (C) in determining whether a claimant's 'physical or other mental impairment,' other than his low IQ imposes a significant work-related limitation." Edwards v. Astrue, No. 07–CV–898, 2010 WL 3701776, at *6 (N.D.N.Y. Sep't 16, 2010). The district courts of the Second Circuit have generally adopted the view of the First, Eighth, and Tenth Circuits to the effect that "a limitation other than low IQ is 'significant' if the claimant suffers from an additional physical or other mental impairment that is 'severe' as that term is defined at step two of the Commissioner's sequential analysis." Id.; see also Baneky v. Apfel, 997 F. Supp.2d 543, 546 (S.D.N.Y.1998); Aviles v. Barnhart, No. 02–CV–4252, 2004 WL 1146055, at *7 (E.D.N.Y. May 11, 2004); Velezquez v. Chater, No. 93–CV–0264E,1996 WL 107109, at *2 (W.D.N.Y. Mar. 6, 1996). Here, Plaintiff had several severe impairments in addition to his intellectual functioning deficits (anxiety disorder,

Because § 12.05 refers to "valid" IQ scores, several courts have concluded that an ALJ may reject an IQ score as invalid when it is inconsistent with the record. Lax v. Astrue, 489 F.3d 1080, 1087 (10th Cir.2007); Markle v. Barnhart, 324 F.3d 182, 186 (3d Cir.2003); Muse v. Sullivan, 925 F.2d 785, 790 (5th Cir.1991); see also Clay v. Barnhart, 417 F.3d 922, 929-31 (8th Cir.2005) (upholding the ALJ's rejection of two sets of IQ scores where the test administrator considered the first set invalid and the report on the second set was sufficiently equivocal as to its validity to allow the ALJ to disregard its conclusions); Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir.1986) (finding the ALJ's rejection of the Plaintiff's low IQ scores proper where the Plaintiff was close to completing a bachelor's degree and had taught high school algebra); Vazquez ex rel. Jorge v. Barnhart, 2005 WL 2429488, at *8 (S.D.N.Y. Sept. 30, 2005) ("As Jorge has multiple IQ scores both below and above 70, it is for the ALJ to reconcile these scores."); Vasquez-Ortiz v. Apfel, 48 F.Supp.2d 250, 257 (W.D.N.Y.1999) (stating that "an ALJ is not required to accept a claimant's IQ scores when they are inconsistent with the record" but finding the Plaintiff's scores were not inconsistent with the record).

However, the Listings themselves provide that "[i]n cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." 20 CFR § 404, Subpart P, App. 1 § 12.00D (6)(c). This has led some courts to conclude that it is not proper for the ALJ to choose among competing scores. See Castillo v. Barnhart, No. 00 CIV. 4343, 2002 WL 31255158, at *14 n. 6 (S.D.N.Y. Oct. 8,

---

adjustment disorder, attention deficit disorder, and migraines). (T at 12).

8

2002) ("However, most courts assume that a valid IQ result in the numerical range satisfies the first prong of 12.05C, and no additional inquiry is appropriate."); Coogan v. Astrue, No. 08-1387, 2009 WL 512442, at *5 n. 1, *6 n. 2 (D.N.J. Feb. 27, 2009) (stating that an ALJ may not decide which of multiple IQ scores he prefers because the regulations only require one score in the range of 60 through 70); Ray v. Chater, 934 F.Supp. 347, 350 (N.D.Cal.1996) (inferring from the regulation's preference for the lowest score amongst the verbal, performance, and full scale scores, that the regulations prefer the lowest score amongst multiple tests).

This Court need not resolve this question in this case. The ALJ did not actually find any of the IQ scores to be "invalid." Instead, the ALJ simply concluded that the "non-verbal testing" was a better indicator of Plaintiff's intellectual functioning because it accounted for the fact that Plaintiff was a non-native English speaker. (T at 14). There are at least two (2) serious problems with this finding. First, the ALJ does not cite any medical evidence in support of his conclusion that the non-verbal testing was a more reliable indicator of Plaintiff's intellectual functioning. As noted above, when faced with multiple IQ scores, the Regulations create either a requirement or a presumption in favor of the lowest score. See 20 CFR § 404, Subpart P, App. 1 § 12.00D (6)(c). If the ALJ was inclined to deviate from requirement (or disregard the presumption), he was obliged to provide something more than a conclusory opinion, expressed in a single sentence without supporting citation.

Second, Dr. Malgieri appears to have accounted for Plaintiff's language issues when administering the testing. To wit, the doctor reported that his findings took "into account the nature of the tests administered, which were designed to be as free of cultural bias as possible . . . ." (T at 246). Dr. Malgieri described Plaintiff's "speech and vocabulary

command" as "quite good considering his new entrance to the USA." (T at 246). Nevertheless, an Egyptian translator was made available and repeated the questions to Plaintiff. (T at 244). Dr. Malgieri reported that Plaintiff "had difficulty understanding even nonverbal directions, which did not have to be translated into his Egyptian native tongue." (T at 248). Dr. Malgieri opined that Plaintiff's ability to work would be "quite limited" because of his processing speed, cognitive processing abilities, and general attitude. (T at 243).

In Muncy v. Apfel, 247 F.3d 728, 733 (8th Cir.2001), the Eighth Circuit afforded the Commissioner an opportunity on remand to provide "further analysis to resolve the twenty-five point discrepancy between [the claimant]'s two IQ scores" and directed the Commissioner to "enter specific findings detailing why [the] first IQ score should not be adopted as the controlling score."

This Court, following the Eighth Circuit's course in Muncy, finds that a remand is necessary for further development of the record. In light of the legal framework and record evidence discussed above, the ALJ's conclusory explanation was insufficient. See Brown ex rel. S.W. v. Astrue, No. 1:05-CV-0985, 2008 WL 3200246, at *10 (N.D.N.Y. Aug. 5, 2008) ("Where the claimant's symptoms as described in the medical evidence appear to match those described in the Listings, the ALJ must provide an explanation as to why the claimant failed to meet or equal the Listings.") (quoting Giles v. Chater, No. 95-CV-0010E, 1996 WL 116188, at *5 (W.D.N.Y.Jan.8, 1996)). A court "cannot ... conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." Morgan on Behalf of Morgan v. Chater, 913 F.Supp.184, 188-189 (W.D.N.Y.1996) (quoting Ryan v. Heckler, 762

F.2d 939, 941 (11th Cir.1985)).

On remand, the Commissioner should provide further analysis regarding which IQ scores (if any) should not be considered "valid" and, if certain scores are found invalid, make specific findings as to why the lowest scores should not be accepted as controlling.

### 3. Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008). Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

## IV. CONCLUSION

This Court recommends that Plaintiff be GRANTED judgment on the pleadings, that the Commissioner's motion for judgment on the pleadings be DENIED, and that this case be remanded for further proceedings.

Respectfully submitted,

_____
Victor E. Bianchini
United States Magistrate Judge

Dated: December 6, 2013

    Syracuse, New York

### V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge

Dated: December 6, 2013

Syracuse, New York